UNITED STATES *v.* MORRIS EUROPEAN & AMERICAN EXPRESS CO. (No. 242).[1]

SPARK PLUGS OF AN UNDECORATED PORCELAIN-LIKE EARTHERN OR STONE SUBSTANCE.
   A substance made of waste melilite or lava that has been pulverized, and after an addition made of oxide of magnesia and alkalies has been molded in the fashion of porcelain and then fired, was for dutiable purposes properly within paragraph 96, tariff act of 1897; and from the evidence submitted and from an inspection of the substance itself, it appearing to be susceptible of decoration, it was rightly assessed by the collector under paragraph 96 of that act.

United States Court of Customs Appeals, February 27, 1911.

APPEAL from decision of Board of United States General Appraisers, Abstract 23261 (T. D. 30601).
   [Reversed.]

   *D. Frank Lloyd,* Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.
   *Joseph G. Kammerlohr* and *John Giblon Duffy* for appellee.

      Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:
   Spark plugs for automobiles made of an unusual material imported from Germany were assessed for duty by the collector of customs at the port of New York at the rate of 55 per cent ad valorem as "insulators of porcelain undecorated" under the provisions of paragraph 96 of the tariff act of 1897, which provides that rate of duty in the following language:

   96. All other china, porcelain, parian, bisque, earthern, stone, and crockery ware, and manufactures thereof, or of which the same is the component material of chief value, by whatever name known, not specially provided for in this act, if painted,

---

tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem; if not ornamented or decorated, fifty-five per centum ad valorem.

The importers made claim under paragraph 97 of the act, which is in the following language:

97. Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem.

They also alleged in some of their protests a claim under section 6 of the act that the merchandise was properly dutiable as a nonenumerated manufactured article at the rate of 20 per cent ad valorem.

The Board of General Appraisers sustained the contention of the importer in those protests where the claim was made that the articles were nonenumerated manufactured articles and overruled the protests in all cases where such claim was not made.

The board based its decision upon the finding that the articles were not susceptible of decoration, and on the authority of United States *v.* Downing (201 U. S., 354), reached the conclusion stated.

There seems to be sufficient testimony in the record to identify the character of the merchandise, at least so far as may be necessary for the purpose of this decision. Under the provisions of paragraph 96 the chief component material required may be that of an earthen or stone substance.

Witnesses who were engaged in the importation of the article and who by visits to Germany, whence they were imported, had acquired a knowledge of the production and of the component materials of the article, testified that it was made of mellilite or lava mined in certain regions of Germany. The material is taken from the mines in blocks, and, so far as this record discloses, is in a great measure used in the manufacture of lava gas tips. An illustrative sample was introduced of a gas tip cut from the original substance. It is of a honey color. Mellilite or melilite, which are the same, are stated by Dana in his Text-Book of Mineralogy to be a component of certain igneous rocks formed from magmas very low in silica, rather deficient in alkalies, and containing considerable lime and alumina; that it is of yellow and brownish colors, and found, among other places, in Wurtemberg, Germany; that it is named from the Greek word meaning "honey" in allusion to the color.

The precise article imported seems to have been made from the waste produced in the manufacture from the original substance of other articles. This waste is pulverized by mechanical methods, and to it is added oxide of magnesia and some alkalies. It is then subjected to a turning or molding process, much in the same manner as porcelain is made, and subsequently fired. By reason of its possess-

ing a higher power of resistance than porcelain it is used in the manufacture of spark insulators.

The official sample presents a divided superficial area. Each part presents a superficial area of at least 1½ square inches, a total of 3 square inches. There is stamped upon a part of the official sample the name of the manufacturer and a designation of the article in plain letters.

The material obviously being within the subject of paragraph 96, the only issue in the case is whether, or not, the article as imported is susceptible of decoration.

Several witnesses testified upon this point at the hearing, as well as to the method of manufacture, which also bears upon its susceptibility to decoration. The method of manufacture is similar to that of porcelain ware. It is undisputed in the record that the article in some instances is glazed. An illustrative sample that is glazed in a single color accompanies the record. There is an abundance of testimony in the record which is corroborated by a casual look at the sample itself, that it could be glazed in numerous colors. It also appears by the record that it might be subjected to decalcomania processes in the course of manufacture. That it or either part of it could be "painted, tinted, stained, enameled, printed, or gilded," all of which are enumerated by the act itself as methods of decoration or ornamentation of such wares, is conclusively shown by the fact that as imported the goods are printed or stamped in plain letters setting forth the name of the manufacturer and class of the articles. It is perfectly obvious that no greater space or other surface would be required to indulge fancy letters or ornamental design so as to come fully within the requirements of the statute as "decorated or ornamented." So glazing in two or more colors has uniformly been held an ornamentation.

The precise statements of the witnesses on this point are reassuring.

Mr. Gustave L. Herz, on behalf of the importers, testified:

Q. In answer to the question by the Government counsel you said they were not susceptible of decoration. What did you mean by susceptible of decoration?—A. * * * You can glaze this material; that is done right along. This part here, it is glazed; it can be lithographed. * * *

*          *          *          *          *          *          *

Q. Is it glazed any color?—A. It is in red, brown, blue.

*          *          *          *          *          *          *

Q. Have you ever seen any of these articles imported similar to the one under consideration that was decorated with different colors?—A. I do not remember that. If you mean a stripe or a little thin line on top of it, I think that has been done.

Mr. Moritz Kirchberger, on behalf of the importers, testified:

Q. You have heard the testimony of the previous witness that it is possible to glaze insulators of this kind?—A. Yes, sir.

Q. Have you a sample that shows such glaze?—A. This is a sample of glazed insulator that I myself once upon a time imported.

Q. Made from the same substance?—A. Made from the same substance.

Mr. Herbert Sinclair, an importer of porcelain spark plugs, called by the Government, answered as follows:

Q. Do you ever decorate these? (Referring to spark plugs manufactured by the firm with which Mr. Sinclair is connected.)—A. We put their name on them; that is the only thing we do with them.

Q. Is that the only ornamentation or decoration that you put on there?—A. Yes, sir.

\*     \*     \*     \*     \*     \*     \*

Q. Is that glazed?—A. Yes; part of it is glazed.

Q. Glazed by heat, is it?—A. Yes, sir.

Q. Colored glaze as well as white glaze could be put on it?—A. Yes, could be put on.

Mr. Jacob Ritschy, called on behalf of the Government, testified:

Q. Do you ever decorate those things—the spark plugs?—A. Put the name on like it is on here now.

Q. Do you put any further decoration than what appears on here?—A. No, sir.

Q. Have you ever known spark plugs to be ornamented or decorated other than with a trade-mark?—A. I have not.

Mr. William Burgess testified that he had never seen a spark plug decorated, but after having his attention called to a porcelain one known as Exhibit X said:

That is a porcelain spark plug, partly glazed and partly unglazed.

These were all the witnesses called at the hearing and is the gist of their testimony upon the subject as to whether or not the article is susceptible of being decorated.

C. A. Janvier, in the work upon Practical Keramics for Students, in speaking of decoration in general, states:

The decoration may be effected by applying plain or colored ornaments in relief, or by stamping, inlaying, or incising, and may be either glazed or unglazed. These methods have been used by nearly all nations, and from the earliest times. \* \* \* When actual colors are not used, light and dark tints or shades are employed, so as to give play and variety to the surface.

Apart from the weight of evidence brought to us to establish that the imported article is susceptible of decoration, it appears to us that the method of manufacture of the article itself, taking into consideration the various methods of decorating such materials, presents a superficial area of $3\frac{1}{2}$ inches unquestionably susceptible of decoration. Even were it a necessary limitation to come within purview of the paragraph that the susceptibility to decoration should be a commercial probability, that element is not here absent. There plainly is exposed surface when the article is in use which in any high-class machine, if not in others, would be finished in keeping with the detail finish of the machine. Witness the illustrative samples here are glazed, some in whole and others in part, while in some the printing thereon is done in fancy letters, all of which evidences a demand for a commercial condition pleasing to the eye—one of which may easily be ornamentation. To hold that the superficial area of the quality

and size presented by this article, made of a material and in a method by which innumerable articles are made and decorated in porcelain, earthenware, and other materials similar to this, is to ignore not only the processes of the day but that of centuries past, wherein porcelain and other similar medallions, cameos, stained and otherwise ornamented stones, and other numerous artistic and valuable porcelain and stone productions of much less superficial area than is here presented by either part of the imported article were by their decoration made not only more valuable and ornamental but historically remarkable.

The court is of the opinion that the articles in question, as imported, were susceptible of decoration and properly assessed by the collector.

*Reversed.*