SHELDON & CO. *v.* UNITED STATES (No. 1711).[1]

1. CONSTRUCTION, PARAGRAPH 226, TARIFF ACT OF 1913—LEGISLATIVE RECOGNITION—"NUTS OF ALL KINDS."

Decisions by the Board of United States General Appraisers that the expression "nuts of all kinds" included inedible as well as edible nuts have stood apparently unchallenged until legislative sanction of the view may be presumed. This construction must be given to this expression in paragraph 226, tariff act of 1913.

2. CONSTRUCTION, PARAGRAPH 226, TARIFF ACT OF 1913—"SHELLED OR UNSHELLED."

The expression "nuts * * * shelled or unshelled" (par. 226, tariff act of 1913) does not include only those nuts which are capable of being shelled.

3. CONSTRUCTION, PARAGRAPH 477, TARIFF ACT OF 1913—NOTES ON TARIFF REVISION AS AID TO—LEGISLATIVE HISTORY AS AID TO.

The tariff act of 1909 specified nuts *eo nomine* within the drug paragraphs, while the act of 1913 does not. "Notes on Tariff Revision, 1913" shows that Congress intended that the specification of "nuts" in each of the drug paragraphs of the tariff act of 1909 referred only to such nuts as were used expressly for dyeing and tanning and that this intention was continued in the act of 1913. Paragraph 477, tariff act of 1913, does not include any kind of nuts.

4. BETEL NUTS.

Betel nuts are dutiable as nuts (par. 226, tariff act of 1913) and not as crude drugs (par. 477) or nonenumerated articles (par. 385).

United States Court of Customs Appeals, February 13, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39365.

[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.

[Oral argument Oct. 27, 1916, by Mr. Lane and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The importations now in question were invoiced as betel nuts, and were entered for duty under the tariff act of 1913.

The collector assessed duty upon them as nuts at the rate of 1 cent per pound under the provision for "nuts of all kinds, shelled or unshelled, not specially provided for," contained in paragraph 226 of the act.

The importers protested, claiming free entry for the merchandise as crude drugs under paragraph 477, with an alternative claim for assessment at 10 per cent ad valorem as nonenumerated articles under paragraph 385 of the act.

The protest was submitted to the Board of General Appraisers and was overruled. From this decision the importers appeal.

The several paragraphs of the tariff act thus cited read as follows:

226. Nuts of all kinds, shelled or unshelled, not specially provided for in this section, 1 cent per pound; but no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

477. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, gums, gum resin, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds; any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture: *Provided*, That no article containing alcohol shall be admitted free of duty under this paragraph.

It may be repeated that the importations are betel nuts. They are so named in the invoice, in the assessment, and in the protest. They are the pit of the drupaceous fruit which grows upon the areca or betel palm, botanically known as *Areca catechu*. The fruit is described as a "one-seeded drupe, resembling a small apple in form and size, the surface orange yellow, smooth and shining, and the thick mesocarp tough and fibrous. The fruits are husked, boiled, and dried to prepare them for the market." The pit which survives this process becomes the betel nut of commerce. It resembles a nutmeg in size and shape and consists of an albuminous body inclosed within a thin skin or rind. It is also the seed of the betel palm tree. The betel nut is not edible in the ordinary sense of that term, but either when young and tender or after boiling in water it is chewed with a little lime in a leaf of the betel pepper. This is said to be a prevalent habit in certain eastern countries.

The foregoing facts are taken from dictionaries and encyclopedias which are cited as authorities by both parties in the present case.

It appears from the testimony that betel nuts are imported into this country for the sole purpose of extracting from them a medicinal alkaloid called "arecoline," which is used in compounding certain vermifuge remedies. They are not planted here as seeds, nor are they used here as a masticatory. The importers in the instant case are engaged in the business of importing and milling botanical drugs, and these importations are designed for that use.

The real issue in the present case is whether the betel nuts thus described are dutiable as nuts under paragraph 226, *supra*, or are free of duty as crude drugs under paragraph 477 of the free list.

The record contains the testimony of only one witness (Mr. F. B. Klock), who testified in part as follows:

Q. How long have you been dealing with the merchandise here under consideration?—A. More or less from my entire experience, 35 years.

Q. In dealing with that article how do you designate it, how is it known?—A. Areca catechu.

Q. That is the only name?—A. Sometimes they are known as areca or betel nut.

Q. Betel nut?—A. Yes, sir.

Q. Areca nut?—A. It is one of the common or vulgar names in the local trade.

Q. Which name predominates, areca nuts or betel nuts?—A. Areca catechu is the proper name.

It may possibly be true, as stated by the witness, that areca catechu is the proper name for the articles in question, but it is certainly quite true that their common or popular name is betel nuts. That name is invariably given to them by all of the popular and semiscientific authorities which are cited by the several parties in the case. The name is constantly referred to as one which is well known and universally applied to the articles.

The following quotations are given in verification of this statement:

Webster's Dictionary:

*Catechu.*—An extract obtained from the betel nut.

Standard Dictionary:

*Catechu.*—Bombay catechu. A decoction of the nut of the areca palm (*Areca catechu*).

Oxford Dictionary:

*Areca.*—Name of the tree and fruit of genus of palms of which one species (*Areca catechu*) bears nuts of the size of a nutmeg.

Century Dictionary:

*Areca.*— * * * A catechu which furnishes the well-known betel nut.

Encyclopædia Britannica:

*Betel nut.*—The betel nut is a fruit of the areca or betel palm, *Areca catechu.* * * *. The fruit is about the size of a small hen's egg, and within its fibrous rind is the seed or so-called nut, the albumen of which is very hard and has a prettily mottled gray and brown appearance. * * * Betel nuts are further used as a source of catechu, which is procured by boiling the nuts in water.

National Standard Dispensatory:

*Areca—Areca nut.—*The seed of *Areca catechu* * * *.

United States Dispensatory:

*Areca nut—Betel nut.—*The *Areca catechu* is an East Indian palm. The fruit contains the nut embedded in a fibrous fleshy envelope, * * * the kernel of which is the betel nut of commerce * * *.

Thorpe's Dictionary of Applied Chemistry, 1912:

*Betel nut.—*The fruit of *Areca catechu.*

New International Encyclopedia:

*Areca catechu.—*The Pinang palm, or betel-nut palm, is a native of the East Indies, whose nut yields a sort of catechu.

A review of the authorities cited by the several parties makes plain the fact that the present articles are popularly and commonly known and regarded as nuts, and the name "betel nuts" is popularly given to them not as an arbitrary designation but because of the fact that in common apprehension they actually are nuts, and that they are produced by the betel tree. It is true that the terms "seeds" and "fruits" are sometimes used in reference to them, but this is done for explanation or illustration only, and not in any case as specifically denominative of them. It is quite certain that the articles are not commonly known as either fruit or seed, nor is there any claim of commercial designation in the case.

The question next arises whether any reason exists for denying the importations classification for duty under the provision for nuts, notwithstanding the fact that they are commonly known by that name. Under this head we may first consider the fact that betel nuts are not edible. If, therefore, the enumerations of paragraph 226, *supra,* apply only to edible nuts, betel nuts would necessarily be excluded therefrom. The paragraph, however, according to its express terms, includes "nuts of all kinds," and this comprehensive enumeration would, of course, literally include such nuts as are inedible as well as edible nuts. It furthermore appears that the reported decisions of the board have favored the view that Congress did not intend to exclude nonedible nuts as such from the enumeration in question, and these decisions have stood apparently unchallenged until legislative sanction of the view may be presumed.

In the Cadenas & Co. case, decided in 1901, G. A. 4891 (T. D. 22894), the board held that so-called bastard Brazil nuts, not edible, were dutiable as nuts not specially provided for under paragraph 272 of the tariff act of 1897.

In the Sheldon & Co. case, decided in 1908, Abstract 19945 (T. D. 29339), the board held that chestnuts made nonedible in order to fit them for use as seeds were dutiable as nuts under paragraph 272, act of 1897.

We think, therefore, that the provision for nuts of all kinds, shelled or unshelled, not specially provided for, appearing in paragraph 226, *supra*, includes such nonedible nuts as may otherwise respond to the terms of the enumeration.

The next question which arises relates to the effect of the phrase "shelled or unshelled," which appears in paragraph 226, *supra*, in connection with the enumeration of nuts of all kinds not specially provided for. It seems fair to concede that betel nuts have no shells within the common acceptation of that term, and therefore can never accurately be described as either shelled or unshelled. It is contended that Congress designed to signify by the use of the term "shelled or unshelled" that only such nuts as are capable of being shelled should be included within the dutiable enumeration in question. The principle underlying the decision in Dingelstedt *v.* United States (91 Fed., 112), approved in United States *v.* Downing (201 U. S., 354), is cited as authority for this claim.

We think, however, that this contention does not correctly interpret the language of the provision in question. That provision is preceded in the tariff act by paragraphs 223, 224, and 225, wherein certain kinds of nuts were assessed with certain rates of duty if unshelled, but with higher rates if shelled. When Congress thereupon formulated the general provision for nuts of all kinds not specially provided for, the phrase "shelled or unshelled" was added not for the purpose of cutting down the force or effect of the enumeration but rather to emphasize the fact that the rate of duty thereby imposed should not be increased upon nuts within the paragraph in case they were shelled. We think that this interpretation is supported upon principle by the cases of Stern *v.* United States (105 Fed., 937), Hempstead *v.* United States (158 Fed., 584), and United States *v.* Morimura Bros. (7 Ct. Cust. Appls., 285; T. D. 36801).

The Hempstead case, *supra*, dealt with a dutiable enumeration of "glass bottles, decanters, or other vessels or articles of glass, cut, engraved, * * * and any articles of which such glass is the component material of chief value, and porcelain, opal, and other blown glassware; all the foregoing, *filled or unfilled*, and whether their contents be dutiable or free." The merchandise in the case was microscopic slides, with concavities in their centers for placing specimens for observation under a microscope. The articles were assessed with duty under the foregoing enumeration. The assessment was protested, and it was contended in behalf of the protest that the enumeration in question by force of the modifying phrase "filled or unfilled" included only such glass articles as were capable of being filled—that is to say, such as were containers. The Dingelstedt and Downing cases, *supra*, were cited in support of

this claim. The court, however, overruled the contention, Gray, Circuit Judge, saying:

We only wish to add that, as an original question, the grammatical construction of the "filled or unfilled" clause, in connection with the whole paragraph, does not necessarily require the exclusion from the purview of the section of articles of glass not susceptible of being filled. The words may be interpreted distributively and would thus apply only to "all the foregoing" which were capable of being filled. It is, perhaps, worth noting also that by the peculiar language of paragraph 97 the articles there described are made dutiable in two classes, viz, "if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem," thus confining the imposition of the duty to these two classes alone, while, as we have pointed out, the words "all the foregoing, filled or unfilled, * * * sixty per centum ad valorem," makes no such classification as to duty, but merely, by way of abundant caution, includes all such as are containers, whether filled or unfilled.

Accordingly, we hold that the present articles come properly within the enumeration of "nuts of all kinds" in paragraph 226, *supra,* and that they would be dutiable under that provision unless they are elsewhere specially provided for in the act. In this behalf, however, the importers claim that the importations are specially provided for as crude drugs by paragraph 477 of the free list, above copied.

It will be observed that paragraph 477, *supra,* provides for the free entry of "drugs, such as * * * fruits, * * * seeds (aromatic, not garden seeds), * * * any of the foregoing which are natural and uncompounded drugs and not edible and not specially provided for in this section, and are in a crude state, not advanced in value or condition by shredding," etc. This paragraph relates only to crude drugs, whereas paragraph 27 of the act imposes the duty upon "drugs, such as * * * fruits, * * * seeds (aromatic, not garden seeds), * * * any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for in this section, but which are advanced in value or condition by shredding," etc.

It should be noted that fruits and seeds are specified as classes of drugs within the purview of the two paragraphs just cited; but that nuts are not so specified in either paragraph. This omission becomes doubly important when we discover that in preceding tariff revisions the several corresponding drug paragraphs specified nuts *eo nomine,* as well as fruits and seeds, as classes of drugs within the intent of the respective paragraphs. In the revision of 1913, however, the specification of nuts was purposely omitted by Congress from each of the drug paragraphs. An explanation of this action in relation to the dutiable provision may be found in "Notes on Tariff Revision, 1913" (Senate Document 136) in these words:

Nuts and nutgalls are omitted, having been transferred to the free list, paragraph 626 (p. 17).

Correspondingly, in relation to the omission of the specification of nuts from the crude-drug paragraph, appears the following explanation, same document (p. 168):

Nuts and nutgalls are transferred to paragraph 626, with tanning materials.

It thus appears that Congress understood or intended that the specification of "nuts" which appeared in each of the drug paragraphs of the tariff act of 1909 referred only to such nuts as were used expressly for dyeing and tanning and that this understanding or intention was continued in the tariff revision of 1913, and was given apt effect by the transfer of the *eo nomine* specification of nuts from the drug paragraphs to the paragraph relating to dyeing and tanning materials.

This legislative interpretation seems to be conclusive upon the subject, and to indicate that Congress did not understand or intend that paragraph 477, *supra*, being the crude drug paragraph of the new act, should include any kind of nuts. Nor can we believe that Congress designed to reenact the specification of fruits and seeds in the several drug paragraphs of the act of 1913 with the effect of including nuts thereunder as species of fruits or seeds. There could indeed be no motive for the express omission of the specification of nuts from the drug paragraphs except that such nuts as were theretofore within those paragraphs should be taken out of them in the new act and transferred to the provision for dyeing and tanning materials, and consequently that the drug paragraphs should no longer include any kind of nuts within their provisions.

This indication of a legislative intent to withdraw the specification of nuts entirely from the drug paragraphs of the act of 1913 makes it unnecessary for us to enter upon any consideration of the relative specificity of paragraphs 226 and 477, *supra*, since the first paragraph deals with nuts and the other one does not.

In this view of the case we agree with the board that the articles at bar are within the dutiable enumerations of paragraph 226, *supra*, and not within paragraph 477 of the free list, and the board's decision to that effect is *affirmed*.