(C. D. 385)

WOOSTER BRUSH CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 21, 1940)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before BROWN and CLINE, Judges; BROWN, J., concurring

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on merchandise invoiced as "imitation bristles." The goods were imported at the port of New York and the collector classified the same under the provision for compounds of cellulose, not made into finished or partly finished articles, under paragraph 31 of the Tariff Act of 1930, and duty was assessed thereon at the rate of 40 cents per pound. The plaintiff claims that the merchandise should be classified as bristles and assessed with duty at 3 cents per pound under paragraph 1507. The tariff provisions herein involved read as follows:

PAR. 31. (b) All compounds of cellulose (except cellulose acetate, but including pyroxylin and other cellulose esters and ethers), and all compounds, combinations, or mixtures of which any such compound is the component material of chief value:

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether or not colloided, not made into finished or partly finished articles, 40 cents per pound * * *.

PAR. 1507. Bristles, sorted, bunched, or prepared, 3 cents per pound.

At the request of the plaintiff the case was set for trial at Cleveland. The plaintiff called Mr. Lewis M. Rhodes, the superintendent and vice president of the importing company who testified that the business of his company was manufacturing brushes for the painters' trade; that about the only description of the merchandise he could give was that it was "an artificial bristle, and used artificially in place of bristle"; that the shipment consisted of strands in two colors—black and white—in 6-inch lengths, packed in bunches about an inch in diameter. Two samples representing the merchandise were re-

ceived in evidence and marked "exhibits 1 and 2." The witness testified further that part of the shipment was manufactured into brushes in his factory and the balance was sold by him to Frederick H. Cone & Co. and H. Rosenhirsch Co.; that those firms were dealers in bristles and materials for brush manufacture; that he did not know of any use for the merchandise other than for brush-making purposes. One of the brushes manufactured by the importing company from the imported merchandise was introduced in evidence and marked "illustrative exhibit A."

On cross-examination the witness testified that he found that the imported merchandise did not answer the purpose of a bristle in the brushes manufactured by his firm which was the reason he sold a portion of the shipment to the other firms mentioned; that he had never visited those firms since he sold the goods to them.

On redirect examination the witness testified that illustrative exhibit A is a paperhanger's smoothing brush and that the merchandise was not commercially successful or suitable for making such brushes; that the goods might be used for making other brushes, such as cheap hair brushes and cheap cloth brushes. On further cross-examination, when the witness testified that the basis of his answer to the last question was "what I have been told," the testimony regarding the use of the merchandise in making hair brushes and cloth brushes was stricken out on motion of counsel for the defendant.

On further redirect examination, when the witness was asked if from his experience he knew whether hair brushes could be made from exhibits 1 and 2, defendant's objection that the question called for a speculative answer was sustained and exception granted to the plaintiff.

The case was then transferred to New York for the defendant's evidence, but no witnesses were called at that port. Exhibits 1 and 2 were ordered analyzed in the chemical laboratory in the New York appraiser's office. The chemist's report, which is filed with the papers in the case, reads as follows:

The sample is composed of a compound of cellulose (regenerated cellulose plus a small amount of pigment and oil or wax as a softener) in strand form.

The plaintiff admits in its brief that the merchandise is described in paragraph 31 (b) (1) but contends that it is more specifically provided for as "bristles" in paragraph 1507.

No attempt was made to prove that the merchandise was commercially known as bristles at the time of the enactment of the Tariff Act of 1930, and, while the record contains no affirmative testimony showing that the goods are in fact bristles, the plaintiff claims that the evidence is sufficient to establish that the articles are bristles within the common meaning of the tariff provision. In his brief, counsel for the plaintiff quotes the following definition from Webster's New International Dictionary, second edition, 1936:

Bristle, n. 1. a. A short, stiff, coarse hair, as on the back of swine. b. Such a hair, or a manufactured substitute, used in a brush or similar article. c. Zool. Any of various stiff hairlike structures, as a hairlike feather.
2. A stiff, short hair of a plant.

Plaintiff claims that the *eo nomine* provision for bristles in paragraph 1507 includes all forms of the articles and, as artificial bristles are bristles within the above dictionary definition, the merchandise should be classified under that provision, citing *Larzelere & Co.* v. *United States*, 8 Ct. Cust. Appls. 64, T. D. 37198, wherein corundum, artificially made, was held classifiable under the provision for corundum. An examination of that decision shows that the merchandise in that case actually was corundum, although it was not natural corundum, it having been produced by a manufacturing process.

Counsel for the defendant quotes, in his brief, the definition of the word "Bristle" in Webster's New International Dictionary, 1926 edition, as follows:

Bristle, n. 1. a. A short, stiff, coarse hair, as on the back of swine. b. Zool. Any of various stiff hairlike structures, as a hairlike feather.
2. A stiff, short hair of a plant.

The same definition appears in the 1930 and the 1933 editions of Webster's New International Dictionary. We note that the earlier editions of the dictionary do not contain the words "Such a hair, or a manufactured substitute, used in a brush or similar article." The defendant quotes also from the Summary of Tariff Information of 1929, page 1921, wherein the description and uses of the bristles in paragraph 1408 of the Tariff Act of 1922 are given, as follows:

Bristles are the stiff, coarse hairs of the hog. Their quality depends upon the season, climate, breed, and maturity. As they are utilized almost wholly in brush manufacture, they are graded according to their serviceability for this purpose. Color, stiffness, resiliency, and length are the chief factors which determine their grades. The colors range from white to black. White bristles are generally higher priced than bristles of other shades because of the demand for them in toothbrushes and other toilet brushes. The butt or stiffer ends of white bristles are cut off and used in toothbrushes.

A feature of bristles is the "flag" or split ends, which are well adapted to holding and spreading paint uniformly. Stiffness, resiliency, and length are desirable in bristles used for paint and varnish brushes. Bristles are classified commercially according to source, such as "Tientsin," "Hankow," etc. They are further identified in the trade by terms designating color, length, and quality.

\* \* \* \* \* \* \*

Competitive conditions. There are produced in the United States practically no bristles which compete with the foreign importations. There are no satisfactory substitutes for bristles. Horsehair is used in such articles as low-priced paint brushes, but horsehair has no split or flag end for holding and distributing paint evenly, and can not be used in the better grade of brushes. Tampico, or "istle" as it is otherwise known, imported from Mexico and South America, is used because of its resemblance to bristles, but it lacks resiliency and durability.

Counsel for the defendant contends that inasmuch as the imported merchandise was not within the dictionary definition of the word "bristle" at and prior to the enactment of the Tariff Act of 1930, it cannot be classified under that provision, even though a dictionary published since the enactment of the act contains a definition broad enough to include the imported merchandise; citing *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T. D. 40520. A review of that decision shows that the rule laid down therein relates to the commercial name under which an article is bought and sold. In such case the commercial meaning of the term at and prior to the enactment of the tariff act must be established. That rule does not apply in this case because here the plaintiff relies on the common meaning of the word "bristles." The rule in such case was reviewed in *Chicago Mica Co. et al.* v. *United States*, 21 C. C. P. A. 401, T. D. 46927, wherein the court said:

"It is well established that tariff statutes are made for the future as well as for the present." *United States* v. *Paul G. Downing et al.*, 16 Ct. Cust. Appls. 556, T. D. 43294, citing *Pickhardt* v. *Merritt*, 132 U. S. 252.

Under the foregoing rule it has been frequently held, in effect, as it was in the cases cited, that tariff laws embrace articles which may not have been in existence at the time of the passage of those laws but which were later developed.

The defendant contends further that by judicial decision the term "bristles" has been limited during a long period of years to bristles which grow on the body of a hog and that Congress must have reenacted the provision in the light of those decisions and intended to cover the same class of merchandise described in the decisions.

The earliest decision brought to our attention is *Frederick W. Von Stade* v. *Chester A. Arthur*, 13 Blatch. 251; 28 Fed. Cas. 1274, decided in 1876. The question in that case was whether hogs' bristles came within a provision reducing duty on "all wools, hair of the alpaca goat and other animals." The court held that:

The term "bristles" is used in the tariff acts to denote a separate and distinct article from hair, and the bristles are not included in the general words "the hair of an animal," but have a distinct classification.

In *F. Irsch* v. *United States*, T. D. 12852, it was held that ordinary hog hair or pig hair, used for stuffing mattresses, was not classifiable as bristles under the Tariff Act of 1890. In *Peter Woll & Sons* v. *United States*, T. D. 20213, 2 Treas. Dec. 746, the question involved was whether the hog bristles were crude or sorted, bunched, or prepared. In *J. C. Pushee & Sons* v. *United States*, T. D. 24797, 6 Treas. Dec. 963, affirmed in *J. C. Pushee & Sons* v. *United States*, 155 Fed. 265, T. D. 28385, the merchandise consisted of hog bristles imported under the Tariff Act of 1897, the question being whether or not they were sorted or bunched or were in a crude state. In *Wilkens Bros.* v. *United States*, 8 Treas. Dec. 701, T. D. 25821 (G. A. 5861),

bristles made from feather quills were held not classifiable as bristles by virtue of the similitude clause under the Tariff Act of 1897. In passing on the issue the court said:

There is no question that the merchandise resembles in appearance hog bristles, and the evidence before us shows that it is sold to brush makers to be used in connection with hog bristles in the manufacture of brushes.

\*        \*        \*        \*        \*        \*        \*

But an examination of the official samples leads us to the conclusion that the merchandise is unfitted for use in the manufacture of brushes except in connection with hog bristles, and, since it is not similar either in material, quality, or texture to bristles, we think that such use is insufficient to justify the assessment of duty under paragraph 411 by virtue of the similitude clause in section 7.

In *Ames Bonner Co.* v. *United States*, Abstract 40116, 31 Treas. Dec. 182, artificial horsehair used by the importer for making brushes was held not classifiable as bristles under paragraph 337 of the Tariff Act of 1913. In *Gullabi Gulbenkian & Co.* v. *United States*, Abstract 44386, 40 Treas. Dec. 429, the merchandise was found to be pig bristles which were bunched. In *F. H. Cone & Co., Inc.* v. *United States*, Abstract 2573, 51 Treas. Dec. 1171, the court held that horsehair was free of duty under paragraph 1586 of the Tariff Act of 1922 as horsehair rather than dutiable as bristles under paragraph 1408. In *A. W. Fenton Co. (Inc.)* v. *United States*, T. D. 43423, 55 Treas. Dec. 825, the court held that porcupine quills were not free of duty under the provision for crude bristles in paragraph 1537 of the Tariff Act of 1922 or under the provision for "hair of horse, cattle, and other animals" in paragraph 1586. The court found that the articles were bunched and therefore were not within the provisions of paragraph 1537, and did not specifically pass on the question as to whether or not they were bristles.

In all of the decisions which we have examined where the question of classification of merchandise under the provision for bristles was involved, except possibly *A. W. Fenton Co. (Inc.)* v. *United States, supra*, where the question as to whether or not the articles were bristles was not passed upon, the court has considered that the provision relates to hog or pig bristles, although the dictionaries described bristles derived from other sources. For instance, the New English Dictionary, 1888 edition, describes bristles as the stiff hairs which grow on the hog, other animals, men, and plants. That definition reads as follows:

Bristle.    1. One of the stiff hairs that grow on the back and sides of the hog and wild boar; used extensively by brushmakers, shoemakers, etc.

2. A short, stiff, pointed or prickly hair or similar appendage on other animals; the short hairs on the face of men when thickened and stiffened by shaving.

3. In plants; a stiff hair or any slender outgrowth which may be likened to a hog's bristle.

Congress is presumed to have reenacted the provision for bristles in the light of the judicial decisions. The situation is similar to that in *Sheldon & Co.* v. *United States*, 7 Ct. Cust. Appls. 454, T. D. 37024, in which case the court had under consideration the meaning of the words "nuts of all kinds," the court said:

It furthermore appears that the reported decisions of the board have favored the view that Congress did not intend to exclude nonedible nuts as such from the enumeration in question, and these decisions have stood apparenlty unchallenged until legislative sanction of the view may be presumed.

The court adopted a similar rule in the case of *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550, in construing the meaning of the word "embroideries." The finding of the court is summarized in the syllabus as follows:

5. CONSTRUCTION, LEGISLATIVE SANCTION.

Congress is presumed to have enacted the provision for embroideries, paragraph 358, tariff act of 1913, in harmony with the judicial interpretation of the word obtaining at that time.

We are of the opinion that the same doctrine is applicable to the provision for bristles. Under numerous decisions of the courts, the provision was uniformly construed as covering only hog or pig bristles, excluding from the provision other commodities used in connection with hog bristles in making brushes. Those decisions were rendered when the dictionaries described the term as referring also to stiff hairs derived from other sources.

Counsel for the plaintiff contends in his brief that the trial judge erred in sustaining an objection to a question in which the witness was asked if in his judgment the merchandise could be used in making brushes. In the view which we take of the meaning of the word bristles, such testimony is entirely immaterial. The question of use is not involved herein. It is a matter of common knowledge that many kinds of hair are used in making brushes, such as camels' hair, horse hair, etc. Proof that the imported goods are suitable for making brushes would not establish that they are bristles.

As the record does not contain affirmative proof which establishes that the goods are bristles, the only other alternative which the court could use in making a finding would be derived from an examination of the exhibits and would involve the exercise of expert knowledge, a procedure which this court cannot legally adopt. In *Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, T. D. 31213, the court said:

\* \* \* It would seem, however, that when the facts upon which proper classification depend are patent to the eye of the expert only and the board has no record evidence before it as to the nature, kind, and character of the goods, it can not classify them solely on its own expert knowledge and experience, and a finding based exclusively on such expert knowledge and experience would be without evidence to support it.

We hold that the plaintiff failed to overcome the presumption of correctness attaching to the collector's decision. The protest is overruled. Judgment will be entered in favor of the defendant.

### CONCURRING OPINION

BROWN, Judge: Upon this a rather meager record and in the absence of proof of commercial designation showing that the article in question was bought and sold in the American wholesale trade as bristles I concur in the conclusion reached.