DINGELSTEDT et al. v. UNITED STATES. UNITED STATES v. DINGELSTEDT et al. SAME v. REISINGER.

(Circuit Court of Appeals, Second Circuit. December 7, 1898.)

Nos. 19, 36, 37.

1. CUSTOMS DUTIES — CONSTRUCTION OF STATUTE — LIMITATION OF GENERAL TERMS.

The phrase, "all articles composed * * * of mineral substances," as used in paragraph 86 of the tariff act of 1894, which is a part of Schedule B, relating to "Earths, Earthenware, and Glassware," and fixes the duty on articles not specially provided for, must be construed, by reason of the collocation of the paragraph in a restricted sense, as applying only to articles composed of mineral substances similar to those enumerated in that schedule.[1]

2. SAME—CLASSIFICATION—ARC-LIGHT CARBONS.

Carbon points for arc lights, composed chiefly of lampblack, natural graphite, and carbon products resulting from the distillation of coal, coke, or petroleum and coal tar, in varying proportions, the lampblack being produced by the combustion of either mineral or vegetable substances, are dutiable, under section 3 of the tariff law of 1894, as manufactured articles not provided for, and not under paragraph 86, as articles composed of mineral substances not specially provided for, nor can they be classified under paragraph 443, in the free list, as preparations of coal tar.

Appeal from the Circuit Court of the United States for the Southern District of New York.

These causes come here upon cross appeals in the first of them, and upon the importer's appeal in the last of them, from decisions of the circuit court, Southern district of New York (the causes were argued together), reversing decisions of the board of general appraisers (87 Fed. 190), which affirmed decisions of the collector of the port of New York touching the classification for duty of certain imported arc-light carbons.

The relevant provisions of the tariff act of 1894 are:

"40. [Paints, colors, and varnishes.] Black, made from bone, ivory, or vegetable, under whatever name known, including bone black and lampblack, dry or ground in oil or water, twenty per centum ad valorem."

"86. All articles composed of earthen or mineral substances, including lava tips for burners, not specially provided for in this act, if decorated in any manner, forty per centum ad valorem; if not decorated, thirty per centum ad valorem."

"443. Coal tar, crude, and all preparations except medicinal coal-tar preparations and products of coal tar, not colors or dyes, not specially provided for in this act [free]."

"Sec. 3. That there shall be levied, collected and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this

---

[1] For interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. U. S., 18 C. C. A. 545.

act, a duty of ten per centum ad valorem; and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.

"Sec. 4. * * * On articles not enumerated manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value. * * *"

The collector and the board held the articles to be enumerated and dutiable under paragraph 86. The circuit court held them to be unenumerated in the schedules, and dutiable under section 3.

D. Frank Lloyd, for the United States.
W. W. Smith, for Reisinger.
Everit Brown, for Dingelstedt.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The board found that:

"The various materials used in the manufacture of carbon points are principally lampblack, natural graphite, or plumbago, gas-retort graphite, which is the free carbon taken up and deposited against the top of the retort in the distillation of coal, some qualities of retort coke, the carbon residuum from the distillation of petroleum, and coal tar. Lampblack at the present time is chiefly produced by the combustion of dead oil, a fractionate of tar distilled from bituminous coal, and by the combustion of natural gas. It is also so produced to some extent from animal and vegetable substances."

They further found that:

"An examination of a carbon point will show that, in the absence of detailed evidence from the manufacturer as to the exact weights, character, proportions, and values of the materials used and their sources, this information cannot be satisfactorily obtained by chemical analysis."

Uncontradicted evidence as to Reisinger's carbons showed that the lampblack used in their manufacture was derived from vegetable fats; and it is contended, with much force, that, even if paragraph 86 be construed so broadly as to cover the other carbons, it can in no event be made to cover Reisinger's, and thus we would have carbons, which in their completed state are substantially identical, subject to different rates of duty. It will be unnecessary, however, to consider any distinctions between the articles arising from their composition or process of manufacture.

The phrase, "all articles composed of mineral substances," standing alone, is one of great breadth, and would cover a great multitude of articles of the most diverse character. But in the tariff act now before us the phrase does not stand alone, and it is a familiar rule of interpretation that general descriptive terms are often restricted in their meaning by reason of their collocation with other words and phrases. This rule of interpretation, sometimes formulated as noscitur a sociis, sometimes as ejusdem generis, is referred to by this court in Dodge v. U. S., 28 C. C. A. 153, 84 Fed. 449, as "well-settled, long-established, and convenient," and was there applied to restrict the phrase, "vegetable substances, crude or unmanufactured," found in paragraph 558 of the tariff act of 1894. Paragraph 86 is the eleventh paragraph in "Schedule B. Earths, Earthenware, and Glassware." The preceding subdivisions of the schedule are "Brick and Tile" (3

91 F.—8

paragraphs), "Cement, Lime, and Plaster" (3 paragraphs), "Clays or Earths" (1 paragraph). Then comes the subdivision "Earthenware and China," which includes paragraphs 83 (common yellow and brown earthenware, stoneware, and crucibles), 84 (china, porcelain, parian bisque, earthen, stone, and crockery ware, including placques, ornaments, vases, etc., white, undecorated), 85 (the same, decorated), 86 (above quoted) and 87 (gas retorts). This collocation of paragraph 86 would seem to indicate most strongly that the phrase, "all articles composed of  *   *   * mineral substances," was not used in its broadest sense, but restricted to articles composed of mineral substances similar to those enumerated in the schedule, if not in the subdivision. Strong confirmation of the correctness of this interpretation is found in the circumstance that congress provides in the paragraph different rates of duty for the "articles" referred to when decorated, and, when not decorated, apparently they had in mind articles susceptible of decoration; and in the further circumstance that congress has inserted in the paragraph the words, "including lava tips for burners." If the phrase relied on were to be given the broad construction contended for, it would be wholly unnecessary to provide specially for lava tips; they would be included in the general phrase. Evidently congress understood that this general phrase was used by it in such a restricted sense that it would not cover the lava tips, and therefore they were specially provided for. Construed as above indicated, the paragraph would not cover the carbons now before the court.

We agree with the board of appraisers and the circuit court that the articles in question cannot be fairly classified as coal-tar preparations, or products of coal tar, since they have passed far beyond the condition in which such preparations and products are known in the arts, and used for medicinal, chemical, or manufacturing purposes, and have been advanced into "constructed forms, instruments, or articles of utility," especially when the completed article presents no determining characteristic received from coal tar. They are not, therefore, entitled to free importation under paragraph 443.

Counsel for Reisinger contends that, since lampblack is the component of chief value in these carbons, they should be assessed for duty at the rate fixed for lampblack, under the provision above quoted from section 4. The result in such case would be the same as that reached in the circuit court, viz. 20 per cent. ad valorem. It would seem, however, that section 4 should be construed with section 3, the two together providing that on all manufactured articles not provided for in the schedules there shall be assessed a duty of 20 per cent., but, if the component material of chief value pays a higher rate of duty, the duty on the manufactured article shall be correspondingly increased.

We concur with the circuit court in the conclusion that the arc-light carbons in question are dutiable as "articles manufactured in whole or in part, not enumerated or provided for in the act," at 20 per cent. ad valorem. The decision of the circuit court is affirmed.