VEITH *v.* UNITED STATES (No. 2053).[1]

1. PARAGRAPH 356, TARIFF ACT OF 1913—"JEWELRY."

Certainly not every importation regardless of size, use, or shape, which remotely resembles a pearl in color, can be regarded as an imitation pearl and assessed as jewelry.

2. CONSTRUCTION—TARIFF TITLES AS AID.

That the tariff entitlement of the schedule may be considered as throwing light upon the subject matter of the schedule is well settled.

3. CONSTRUCTION, PARAGRAPH 167, TARIFF ACT OF 1913—"ARTICLES OR WARES PLATED WITH GOLD OR SILVER."

The provision of paragraph 167, tariff act of 1913, for "Articles or wares plated with gold or silver" embraces only such articles or wares as are wholly or in chief value of metal.

4. HATPINS IN CHIEF VALUE OF PASTE.

Hatpins with large paste heads of a pearly luster and metal gold-plated stems, the paste heads being the chief value, are classifiable under paragraph 95, tariff act of 1913, as manufactures of paste, and not under paragraph 167 as "Articles or wares plated with gold or silver," or paragraph 356 as "jewelry."

[1] T. D. 38554 (38 Treas. Dec., —).

United States Court of Customs Appeals, November 23, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8353 (T. D. 38447).

[Modified.]

*Brooks & Brooks* (*Frederick W. Brooks jr.*, and *Ernest F. A. Place* of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General (*Harry M. Farrell*, special attorney, of counsel), for the United States.

[Oral argument Nov. 4, 1920, by Mr. Place and Mr. Hanson.]

Before SMITH, BARBER, DEVRIES and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The contested issues presented by this appeal are represented by six samples, or sets of samples, designated in the record as Exhibits Nos. 1, 2, 3, 4, 5, and 8. A stipulation filed herein consents to an affirmance of the board's decision as to all of these importations represented by Exhibits Nos. 6 and 7. They were held by the Board of General Appraisers to be properly dutiable as "manufactures in chief value of beads" under paragraph 333, current tariff act, and by consent that part of the board's decision is affirmed.

The goods are hatpins. The tops are concededly manufactures of paste. The stems are admittedly metal, plated with gold. They are spheroids, parabolic and plain, and pear shapes. They are all 1 inch or more in dimensions and of a fishskin or mother-of-pearl hue, or finished with varied colorings, some of a clear white, others purplish and others dark. They are valued at above 20 cents per dozen pieces. They were classified for duty by the collector of customs at the port of New York as "jewelry, commonly or commercially so known," under paragraph 356 of the tariff act of 1913.

That part of the tariff act under which these articles to which this appeal is limited were classified for dutiable purposes reads:

356. Jewelry, commonly or commercially so known, valued above 20 cents per dozen pieces, 60 per centum ad valorem;  * * *

They were claimed by the importers properly dutiable as manufactures of paste under the provisions of paragraph 95 of said act, which, in so far as pertinent, we quote:

95.  * * *  all glass or manufactures of glass or paste or of which glass or paste is the component material of chief value, not specially provided for in this section, 30 per centum ad valorem.

The Board of General Appraisers held them properly ratable for duty as "articles or wares plated with gold or silver," as that term is employed in paragraph 167 of said act, which in full reads:

167. Articles or wares not specially provided for in this section; if composed wholly or in part of platinum, gold, or silver, and articles or wares plated with gold or silver, and whether partly or wholly manufactured, 50 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, alu

minum, or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

Inasmuch, however, as none of the protests made claim under paragraph 167, they were by the board overruled.

An instructive paragraph in pari materia providing for hatpins will be quoted in full, as follows:

158. Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; any of the foregoing composed wholly of brass, copper, iron, steel, or other base metal, not plated with gold or silver, and not commonly known as jewelry, 20 per centum ad valorem.

As a matter of common impression, whether or not these articles are commonly known as jewelry, in that they are chiefly made of imitation pearls, the court views that to so conclude would seriously tax the most credulous imagination. In most cases in shape and in all cases in size and colorings they far more imitate other known articles of commerce. In size they more nearly resemble golf balls or pears and plums than the ordinary pearls of commerce, and in colorings they suggest to the mind fishskins, or mother-of-pearl as seen in umbrella handles, opera glasses, knife handles, and in numerous similar articles of commerce, rather than the pearls of commerce. Certainly not every importation, regardless of size, use, or shape, which remotely resembles a pearl in color, is to be regarded as an imitation pearl and assessed as jewelry.

Scant testimony was taken in this case, but that taken in a former case involving similar merchandise was by consent made a part of the record. Therein the controverted point was whether such hatpins were commercially known as jewelry. The board therein found there was no such general and uniform commercial understanding in the wholesale trade in these articles throughout the United States; and, in so far as the matter is as aforesaid presented by this record, that finding would be amply justified. The board herein, however, did not find upon that question, but, following Cross Co. et al. *v*. United States (7 Ct. Cust. Appls., 43; T. D. 36308), and Saji & Kariya Co. et al. *v*. United States (9 Ct. Cust. Appls., 78; T. D. 37945), found these hatpins to be in substantial parts plated, and, therefore, and solely for that reason, concluded them dutiable under said paragraph 167.

We agree with the board in this finding of fact, but are unable to agree with them in their legal conclusion. The board found, and that finding is abundantly supported by the record, that these hatpins are in chief value of paste. The legal issue, however, here presented as to the proper construction of the phrase "articles or wares plated with gold or silver" as a member provision of paragraph 167 was not decided by the board. Its answer in our opinion concludes all issues here presented.

Did Congress intend by this provision to include *all* articles plated with gold or silver or only articles wholly or in chief value of metal?

This court in Cross Co. et al. *v.* United States (7 Ct. Cust. Appls., 43; T. D. 36308) *assumed,* for the purpose of decision, though it was not necessarily therein an issue, that this phrase included only such plated articles as were wholly or in chief value of metal. There were therein two classes of merchandise involved—metal frames for purses or hand bags, and penholder racks in chief value of glass. The court differentiated them according to chief value, holding—

Concerning the purse frames:

We are dealing now with a metal article exclusively, and paragraph 167, as it applies to metal articles, first covers "articles or wares plated with gold or silver." Secondly, it provides for metal articles of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, "but not plated with gold or silver," at the lower rate of 20 per cent. In determining, therefore, the classification of a metal article, it must be kept in mind that the purpose of the latter clause of this paragraph is to fix the rate of duty for such metal articles and that the intent is clear to exclude from them any such metal article plated with gold or silver. In order to exclude metal from the latter portion of this paragraph, and fix its status as dutiable under the former portion, it is not necessary to show that the whole surface is plated or that any particular percentage of the surface is plated. It is enough that there is a substantial portion of the article plated.

Concerning the penholder racks:

We think a different view should be taken of this importation. We have here a metal rim which is applied to a glass holder, the glass being of chief value. The metal article itself would of course if imported separately be dutiable at the rate fixed by paragraph 167, but it is only a part and a relatively small part of the importation as it comes into the commerce of the country. The article as imported can hardly be said to be a plated article. It has a small portion of its surface to which a plated article has been attached, but this is of minor value. The component of chief value is glass, and we think the glass stands in question here properly dutiable under paragraph 95.

In Saji & Kariya Co. et al. *v.* United States (9 Ct. Cust. Appls., 78; T. D. 37945) this court quoted with approval the Cross Co. case, and, while the subject of the former was metal articles, plated, emphasized the distinction drawn in the latter case. We therein said:

It is plain that the vases are designed chiefly for ornamental purposes; consequently their beautiful and artistic appearance is a factor which greatly conduces to their value. This is materially enhanced by the gold or silver plating which ornaments prominent and important parts of their exposed and visible surface. The plating of gold or silver which thus adorns them constitutes more than an insignificant or negligible element in their construction. It is a substantial and even important part of the articles themselves. It is not necessary that an article be wholly covered with gold or silver plating in order to bring it within the classification of plated articles under the provision now in question, nor can any hard and fast mathematical line of distinction be drawn in the application of the provision. *The classification includes all such metallic articles as have a substantial portion of their surface, that is to say, more than an insignificant or negligible portion, covered by a plating of gold or silver.* (Italics ours.)

It must be borne in mind that paragraph 167 is the "catchall" paragraph of "Schedule C" of the current tariff act, the entitlement of which schedule is "Metals and manufactures of." A careful study of the provisions thereof discloses that whenever therein, and there are but few instances, Congress intended to include articles *in part of metal* exact language was employed for the purpose. Its employment in the very paragraph, 167, and omission from this member phrase, is instructive. The schedule is for "Metals" and "Manufactures of" such, uniformly interpreted as meaning wholly or in chief value of metals. That the tariff entitlement of the schedule may be considered as throwing light upon the subject matter of the schedule is well settled. Particularly in point is Fenton *v.* United States (1 Ct. Cust. Appls., 529; T. D. 31546). Fishing corks were there the subject of decision. We, at page 533, said:

The official samples, under the evidence, are not ready for the angler's use, and to hold them to be a fishing tackle or part thereof we think would do violence to the ordinary meaning of the words. Such a holding would involve the further conclusion, which seems unwarranted, namely, that Congress intended that an unfinished article composed of nothing but cork, *should be classified under Schedule C of the tariff act, which in its general scope relates to metal and its manufactures.* (Italics ours.)

In De Ronde *v.* United States (1 Ct. Cust. Appls., 104; T. D. 31112) this principle of tariff interpretation was early employed in the following particulars:

We think an examination of the statute clearly indicates that the blues referred to in paragraph 45 are the blues in paints and colors. With the heading under which this paragraph occurs, it would read as follows:

"Paints, colors, and varnishes. * * * blues, such as Berlin, Prussian, Chinese, and all others, containing ferrocyanide of iron, in pulp, dry or ground in or mixed with oil or water, 8 cents per pound."

We think that the arrangement of this paragraph in the statute itself under the heading of "Paints, colors, and varnishes" is not to be ignored.

In Crimmins & Pierce et al. *v.* United States (6 Ct. Cust. Appls., 137; T. D. 35392), authority of the Supreme Court was given for its application. We said:

Moreover, the title of the schedule is "Wool, and manufactures of." While the rule is, of course, that the title of an act or of a paragraph does not control the legislation embraced therewithin, it is in cases of doubt an accepted source of information and can always be looked to as one of the guides to the legislative purpose. This rule obtains as to the schedule titles in tariff laws.

In this particular there is a single and exceptional uniformity maintained throughout Schedule K, denominated "Wool and manufactures of," in that it includes for duty purposes as materials only the hair and the wool of animals usually and commonly regarded as wool-bearing animals.

The Board of General Appraisers in a recent and elaborate opinion of much merit reached the same conclusion herein reached by this court. American Shipping Co.'s case (G. A. 8108; T. D. 37409).

We quote with approval the words of the board and its included authorities in stating its conclusion:

That principle of statutory construction applied to the interpretation of the provision for plated articles in the present paragraph 167, requires that, before an article may be said to be properly classifiable thereunder, it should appear, first, that it is composed in chief value of metal, and second, that it is plated with gold or silver.

If the provision read "articles or wares covered with gold or silver," and appeared as an independent paragraph in the tariff, the situation would be entirely different. But the use of the word "plated" and the fact that the provision appears in a paragraph and schedule covering only metals and articles in chief value of metals render it difficult to conceive how a picture frame composed in chief value of wood can be classified thereunder. The scope of the particular provision is unquestionably restricted to that of the other provisions in paragraph 167.

In United States v. Dingelstedt (91 Fed. 112), the Circuit Court of Appeals, Second Circuit, speaking through Judge Lacombe, said:

"The phrase, 'all articles composed of mineral substances,' standing alone, is one of great breadth, and would cover a multitude of articles of the most diverse character. But in the tariff act now before us the phrase does not stand alone, and it is a familiar rule of interpretation that general descriptive terms are often restricted in their meaning by reason of their collocation with other words and phrases. * * * Paragraph 86 is the eleventh paragraph in 'Schedule B.—Earths, earthenware, and glassware.' * * * This collocation of paragraph 86 would seem to indicate most strongly that the phrase, 'All articles composed of * * * mineral substances,' was not used in its broadest sense, but restricted to articles composed of mineral substances similar to those enumerated in the schedule, if not in the subdivision."

A case more directly in point is that of Cross v. United States (7 Ct. Cust. Appls., 43; T. D. 36308), since in it the court passed upon the very provision in paragraph 167 here under consideration. The merchandise consisted of plated metal articles and penholder racks or stands, the latter having glass as the component material of chief value. Of the plated metal articles the court said:

"We are dealing now with a metal article exclusively, and paragraph 167, as it applies to metal articles, first covers 'articles or wares plated with gold or silver.' Secondly, it provides for metal articles of iron, * * * or other metal, 'but not plated with gold or silver,' at the lower rate of 20 per cent. In determining, therefore, the classification of a metal article it must be kept in mind that the purpose of the latter clause of this paragraph is to fix the rate of duty for such metal articles and that the intent is clear to exclude from them any such metal article plated with gold or silver."

The penholder racks or stands, although the rims thereof were of metal which was plated with gold or silver, the court excluded from paragraph 167 and held them dutiable under paragraph 95 for the reason that they were composed in chief value of glass.

The court views, therefore, that these articles being in chief value of paste, not being commonly or commercially known as jewelry, and not being in chief value of metal, are properly dutiable as manufactures of paste under paragraph 95 of said act.

Except as hereinbefore stated, the decision of the board is therefore reversed.

*Modified.*