UNITED STATES *v.* MURPHY & Co. (No. 2603) [1]

RELATIVE SPECIFICITY—"SNAP FASTENERS AND CLASPS" (PAR. 348, TARIFF ACT OF 1922) AND JEWELRY MATERIAL (PAR. 1428)—SUSCEPTIBILITY—"NOT MOUNTED ON TAPE" (PAR. 348)—EXPRESSED EXCEPTION EXCLUDES OTHERS.

The provision of paragraph 348, Tariff Act of 1922, for "Snap fasteners and clasps" is more specific than that of paragraph 1428 for metal jewelry material. *United States* v. *Clarke & Co.*, 13 Ct. Cust. Appls. 462, T. D. 41349, decided concurrently herewith. The language of paragraph 348, "not mounted on tape," does not exclude such as are not susceptible of being so mounted.—Id. Since paragraph 348 excepts from its operation such snap fasteners and clasps as are plated with gold, silver, or platinum, it is inferred that no other exception was intended. Circular brass spring snaps or clasps, used for connecting the ends of necklaces, are classifiable under paragraph 348, rather than paragraph 1428.

United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, G. A. 8964 (T. D. 40794)

[Affirmed.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

---

[1] T. D. 41348

[Oral argument October 7, 1925, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of circular brass spring snaps or clasps, not plated with gold, silver, or platinum, and used for the purpose of connecting and fastening the ends of necklaces. They were assessed for duty by the collector at the port of Philadelphia as "metal snaps" used in the manufacture of necklaces and suitable for use in the manufacture of jewelry, at 75 per centum ad valorem under paragraph 1428 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1428. Jewelry, * * * stampings, galleries, mesh, and other materials of metal, * * * finished or partly finished, * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph, 75 per centum ad valorem.

It was claimed in the protest that the merchandise was properly dutiable at 55 per centum ad valorem under paragraph 348 of the Tariff Act of 1922, which reads as follows:

PAR. 348. Snap fasteners and clasps, and parts thereof, by whatever name known, or of whatever material composed, not plated with gold, silver, or platinum, and not mounted on tape, 55 per centum ad valorem; mounted on tape, including sew-on fasteners, 60 per centum ad valorem.

On the trial before the Board of General Appraisers the importer offered in evidence a sample of the merchandise and the testimony of one witness. The material portion of the testimony is as follows:

Q. Just what is this article?—A. That is a snap that we use to put on necklaces, to finish up the item.

Q. Please explain how it fastens the ends together?—A. There is a little ring there to be sewed on each side of the necklace, and that opens on the side.

Q. Is it referred to sometimes as clasps and sometimes as snap fasteners?—A. Clasps or snap fasteners, either one.

Q. Of what material is it made?—A. Brass.

Q. Is there any precious metal about it?—A. No.

Q. There is no gold or silver or platinum?—A. No, sir.

Q. Do any of them come mounted on tape?—A. No, sir.

By Mr. NEARY:

Q. Is it used exclusively in the manufacture of jewelry?—A. We use it for necklaces only. We manufacture no jewelry.

Q. That is the only thing that you know of that it can be used or has been used for?—A. I don't know of any other use outside of a necklace.

The Government submitted no evidence.

Upon this record the Board of General Appraisers held, and correctly so, we think, that, while the merchandise should be considered as being included within the general provisions of paragraph 1428, *supra,* as materials of metal suitable for use in the manufacture of

jewelry, on account of the presumption of correctness attending the collector's classification, which to that extent had not been rebutted by the evidence, it was, nevertheless, *eo nomine* and, therefore, more specifically provided for in paragraph 348, *supra*. In its opinion by Sullivan, G. A., the board said:

"Materials of metal" is a general description; "clasps," an *eo nomie* designation, and being specific must prevail over the general description. *Tower v. United States*, 11 Ct. Cust. Appls. 157, T. D. 38948; *Anderson v. Same*, id. 107, T. D. 38751.

The Government contends that, since Congress has provided in paragraph 348, *supra*, for one rate of duty for snap fasteners and clasps when not mounted on tape, and a higher rate of duty for such articles when mounted on tape, it was intended that such provisions should be so limited in their application as to include only such articles as are susceptible of being mounted on tape, such as "small invisible clasps" used "to fasten ladies' dresses."

This construction is urged by the Government upon authority of the following cases: *United States v. Downing*, 201 U. S. 354; *Fensterer & Ruhe v. United States*, 1 Ct. Cust. Appls. 93, T. D. 31110; *United States v. Morris*, 1 Ct. Cust. Appls. 300, T. D. 31356; *Dingelstedt v. United States*, 91 Fed. 112; *Crawford v. United States*, U. S. Cir. Ct., T. D. 28539.

In the *Downing* case, *supra*, the Supreme Court was considering paragraph 97 of the tariff act of 1897, which reads as follows:

PAR. 97. Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem.

In its opinion in the case the Supreme Court said:

As was decided in *Dingelstedt v. United States*, 91 Fed. Rep. 112, the paragraph covers articles which are susceptible of decoration and not, as contended by respondent, articles decorated or not decorated, irrespective of their capability of being decorated.

In the *Dingelstedt* case, *supra*, referred to by the Supreme Court in the *Downing* case, *supra*, the Circuit Court of Appeals, second circuit, had under consideration paragraph 86 of the tariff act of 1894, the predecessor of paragraph 97 of the act of 1897. In the *Crawford* case, paragraph 97, *supra*, was involved and the decision in the *Dingelstedt* case was followed by the United States Circuit Court, Southern District of New York.

This court in the case of *Fensterer & Ruhe v. United States*, *supra*, had under consideration paragraph 96 of the tariff act of 1897, which reads as follows:

PAR. 96. All other china, porcelain, parian, bisque, earthen, stone, and crockery ware, and manufactures thereof, or of which the same is the component material

of chief value, by whatever name known, not specially provided for in this act, if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem; if not ornamented or decorated, fifty-five per centum ad valorem.

In this case the court carefully reviewed the cases heretofore referred to, and, in holding that paragraph 96, *supra,* was limited in its application to articles susceptible of decoration, in an opinion by Hunt, Judge, said:

In *Dingelstedt* v. *United States,* 91 Fed. Rep., 112, the Court of Appeals of the Second Circuit, in considering the proper classification of certain carbon points for arc lights, held that the phrase "all articles composed of * * * mineral substances * * * if decorated in any manner, forty per centum * * *; if not decorated, thirty per centum * .* *," as used in paragraph 86 of the tariff act of 1894, which is a part of Schedule B, relating to earths, earthenware, and glassware, and in which the duty on articles not specially provided for is fixed, should be construed, by reason of the collocation of the paragraph, as applying only to articles composed of mineral substances similar to those enumerated in that schedule. The learned court, however, in reaching its conclusion, expresses the opinion that "apparently" Congress had in mind, when enacting the statute, articles susceptible of decoration. It would seem to us not a strain to regard the argument of the court as applicable only to the particular paragraphs which the court had under examination; but we find that the reasoning has been extended and quoted as a correct interpretation of the sections of the tariff act of 1897, where like language is used, and which generally control duties to be assessed upon china and pottery.

It should be observed that in limiting the application of the paragraphs under consideration in those cases to articles susceptible of decoration, the courts had in mind then, as we should have now, that the only purpose of applying rules of construction is to endeavor to ascertain the purpose and intention of Congress. Undoubtedly with this thought in mind, this court in the case of *United States* v. *Morimura Bros.,* 7 Ct. Cust. Appls. 285, T. D. 36801, in an opinion by Barber, Judge, said:

At the outset it may, with propriety, be observed that in the case of *Fensterer & Ruhe* v. *United States* this court somewhat reluctantly followed what it deemed to be the rule of construction applicable to the paragraph thereunder consideration, because of the interpretation which identical language in an earlier statute relating to the same subject matter had received in other Federal courts, but that rule had never been extended by this court.

See also *United States* v. *Wells Fargo & Co.,* 1 Ct. Cust. Appls. 158, T. D. 31211; *Kaskel & Kaskel et al.* v. *United States,* 4 Ct. Cust. Appls. 38, T. D. 33264; *Scientific Supply Importing Co.* v. *United States,* 5 Ct. Cust. Appls. 56, T. D. 34094; *Knauth, Nachod & Kuhne* v. *United States,* 6 Ct. Cust. Appls. 128, T. D 35389; *Sheldon & Co.* v. *United States,* 7 Ct. Cust. Appls. 454, T. D. 37024.

In paragraph 427 of the Tariff Act of 1909, "snap fasteners, *or* clasps, or parts thereof, by whatever name known," were associated

with buttons of various kinds and of various materials. (Italics ours.)

In paragraph 151 of the Tariff Act of 1913, the language was changed to read, "snap fasteners *and* clasps by whatever name known, * * * made wholly or in chief value of *iron or steel.*" (Italics ours.) Here they were associated with "steel trousers buttons, and metal buttons," metallic hooks and eyes, and belt, trousers, and waistcoat buckles.

Paragraph 348, *supra*, provides for snap fasteners *and* clasps, by whatever name known, or of whatever material composed. The paragraph is specially limited in its application, however, to such articles as are "not plated with gold, silver, or platinum." There is no other limitation upon its application, unless the provisions for different rates of duty depending upon whether the articles are, or are not, mounted on tape, were intended by Congress to further limit the scope of the paragraph to such articles as are susceptible of being mounted on tape.

Our attention has been called to the case of *In re Sheldon*, T. D. 31896, G. A. 7278, in which the Board of General Appraisers considered the provisions for "snap fasteners, or clasps," in paragraph 427 of the Tariff Act of 1909, and in an opinion by Sharretts, G. A., said:

A provision for "clasps, by whatever name known," standing alone, would seem to be more specific than that for "jewelry," but where the word "clasps" is coupled with and probably intended to be synonymous with "snap fasteners," and is included in a paragraph devoted wholly to buttons or parts of buttons, we must presume that the snap fasteners or clasps provided for therein are in the nature of, or serve the same purpose or use as, buttons commonly used on gloves and shoes. All of the enumerated articles in paragraph 427 are intended for utilitarian purposes, while the clasp in question is a part of a necklace intended to adorn the person, serving no useful purpose, and is not ejusdem generis with the articles specified in paragraph 427.

We have called attention to the change of language in paragraph 151 of the Tariff Act of 1913, the provision therein being for snap fasteners *and* clasps. This language has been used in paragraph 348, *supra*. Probably the change of language was occasioned by the decision of the board in the *Sheldon* case; in any event, the language was changed in paragraph 151, *supra*, so as to provide for snap fasteners and also clasps, made of iron or steel, by whatever name known. In paragraph 348, *supra*, Congress has not only provided for snap fasteners and clasps, by whatever name known, but has extended the provisions to include all such articles regardless of the material of which they may be composed, except such as are plated with gold, silver, or platinum. Moreover, they are no longer associated directly with buttons or buckles.

A clasp is defined by Funk & Wagnalls New Standard Dictionary as follows:

1. A fastening by which things or the parts of a thing are bound or held together; also, any instrument or bond of connection, as a tendril, the hook that fastens on an eye, a grappling-iron, etc.

The word snap is defined by the same authority as follows:

3. Any fastener or other device that closes or springs into place with a snapping sound, as a snap-hook or the metal fastener of a pocketbook.

From the definitions of the two words it is not difficult to understand why the Congress provided for both snap fasteners and clasps. They both answer to the general description of fasteners, but it should be noted that, according to the dictionary definition, a snap fastener is limited to such fasteners as close or spring into place "with a snapping sound," while a clasp is defined as a fastener "by which things or the parts of a thing are bound or held together;" including "any instrument or bond of connection, as a tendril, the hook that fastens on an eye," etc.

We do not wish to be understood as holding that all "fasteners" were intended to be included within the paragraph. It is, of course, confined to clasps and snap fasteners, but with these dictionary definitions in mind at the time of the enactment of the paragraph in question, and knowing that the terms snap fasteners and clasps included articles of various sizes and shapes, and having diversified uses, is it reasonable to assume that the Congress intended, by the language of the paragraph under consideration, to limit its application to such articles as were susceptible of being mounted on tape? If the Congress had intended to so limit the application of paragraph 348, *supra*, we are confident that language more in consonance with such intention would have been used.

Moreover, the paragraph provides for all snap fasteners and clasps regardless of the name by which they may be known, or of the material of which they may be composed, excluding only such as are plated with gold, silver, or platinum. The Congress having incorporated in the paragraph one express exception to its general application, we think, considering the context, that no other exception was intended. *United States* v. *Field & Co.*, 7 Ct. Cust. Appls. 430, T. D. 36985.

With these observations, relative to the construction of the paragraph in mind, it seems to us that there remain for consideration, in order to properly determine the issues in the case, two questions of fact, namely; First: Are the articles in question snap fasteners or clasps? Second: If they are in fact either of such fasteners, are they plated with gold, silver, or platinum?

It having been established in this case that the articles in question are fasteners, and that they are known both as clasps and as snap

fasteners, and apparently being within the dictionary definitions of such articles, and as they are not plated with gold, silver, or platinum, they are *eo nomine* provided for in paragraph 348, *supra,* as snap fasteners or clasps; and, as the *eo nomine* provision for snap fasteners and clasps is a more specific designation of such articles than the general provision for materials of metal suitable for use in the manufacture of jewelry contained in paragraph 1428, *supra,* they must be held to be properly dutiable under paragraph 348, *supra.*   *United States* v. *European Watch & Clock Co.,* 11 Ct. Cust. Appls. 363, T. D. 39160; *Kresge Co. et al.* v. *United States,* 11 Ct. Cust. Appls. 396, T. D. 39318.

For the reasons stated the judgment is *affirmed.*