For the foregoing reasons the protests are overruled, and judgment will issue accordingly.

### CONCURRING OPINION

OLIVER, Chief Judge: I concur with the majority in their conclusions, overruling the protests and denying defendant's motion to incorporate the record in *Swanson-Lindstrand, Inc.* v. *United States*, 32 Cust. Ct. 526, Abstract 58171. In doing so, I do not agree that the record in a previous case may not be incorporated in a pending case, over objection, solely on the ground that the parties are not the same.

The rule under consideration (rule 20) is very clear and explicit in stating that the record, or any part thereof, in a previous case, may *"within the discretion of the court* [italics supplied], be admitted in evidence in the pending case upon motion of either party * * *." Exercising discretion in the application of the rule involves consideration of many different factors, so that whether or not a record should be incorporated is a matter to be determined from the facts and circumstances in each particular case.

(C.D. 2085*;*

JOHN H. FAUNCE, PHILADELPHIA, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 20, 1959)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Margaret M. Kiley*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on ceramic rods imported from West Germany on August 23, 1956, at 33 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as electrical porcelain ware. It is claimed in the protest that the merchandise is properly dutiable at 15 per centum ad valorem under paragraph 214 of said tariff act (as modified by the General Agreement on Tariffs and Trade, T.D. 51802) or at 13 per centum ad valorem under paragraph 372 or at 10 per centum ad valorem under paragraph 1558. The latter two claims were abandoned at the trial.

Paragraph 212 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, provides:

China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, composed of a vitrified nonabsorbent body which when broken shows a vitrified or vitreous, or semivitrified or semivitreous fracture, and all bisque and parian wares, including clock cases with or without movements, plaques, pill tiles, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware, all the foregoing, whether plain white, painted, colored, tinted, stained, enameled, gilded, printed, or ornamented or decorated in any manner, and manufactures in chief value of such ware, not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Electrical porcelain ware_____ 33% ad val.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Paragraph 214 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, provides:

Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not (except synthetic materials of gem stone quality, such as corundum and spinel, and articles and wares composed wholly or in chief value of such materials, and except marble chip or granite):

　If not decorated in any manner:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other_____ 15% ad val.

At the trial, Willard Ellsworth Hauth, Jr., manager of ceramic research for the International Resistance Co., maker of components for the electronics industry, testified that he was familiar with the merchandise involved herein as he had worked closely with the initial development and production of the products made therefrom, and had done research on ceramics in connection with their application. Samples of the products were received in evidence as plaintiff's collective exhibits 1 through 5. They appear to be small grayish-white ceramic rods, having a smooth unblemished surface, varying from about one-fourth of an inch to about 2 inches in length, and from less than one-sixteenth of an inch to about one-fourth of an inch in diameter. The witness stated that they are composed of naturally occurring earthy materials, which are compounded by ceramic processes, resulting in a vitrified product, which could be regarded as porcelain ware.

Mr. Hauth testified that the imported articles are used as component parts of pyrolitic carbon resistors which his firm manufactures. He described the process of production as follows: The ceramic rods are placed in a flask which is introduced into a furnace at a high temperature. Gaseous hydrocarbon vapors are passed into the furnace where they are decomposed by the heat and the catalytic action of the ceramic surface. As a result, the ceramic rods are completely covered with a carbon resistive film. When they are removed from the furnace, they are passed through automatic equipment which puts a silver termination band on each end of the rods. A sample in this condition was introduced into evidence as plaintiff's illustrative exhibit 6. The rod appears to be covered with a black material and has silver bands at each end. The rods are then tested for resistance value and adjustments made, if necessary. Metal caps with wire attached are pressed on each end of the ceramic (plaintiff's illustrative exhibit 7), and the articles are coated with an opaque insulating coating, which protects from abrasion and from moisture, or they are molded with a resinous

molten powder applied by a compression molding. The protective coating or molding is then marked to show resistance range, tolerance, and other items required by military or customer specification. A coated sample was received in evidence as plaintiff's illustrative exhibit 8. The entire rod, including the caps, appears to have been covered with a blue glossy material and certain markings have been placed thereon. A molded sample was introduced into evidence as plaintiff's illustrative exhibit 9. The rod portion, which appears to have no caps, is covered with a red glossy material.

According to the witness, these ceramics are specially prepared for the application to which they are to be put. They are of high premium quality both with regard to the physical tolerance of the pieces and more particularly with respect to the surface of the ceramic. The witness explained:

> It is necessary that the ceramic surface be completely natural and uncontaminated. This is due to the fact that the ceramic itself is a catalyst and strongly influences the type of film which results from its processing, as previously described. It is specified in the purchase of these ceramics that the surface be uniformly microcrystalline; that it have no visible defects, such as pits, scratches, dark spots, no defects visible to the naked eye from a distance of 12 inches.

The witness added that these articles may not be handled with the bare hands between the time they leave the firing kiln until the film has been deposited on them; otherwise, instead of a uniform film, white imprints of fingermarks would appear on the rods.

Mr. Hauth stated that the pyrolitic carbon film surrounds and covers the ceramic rods so that they are completely hidden from view after they are processed, and that nothing is on them in their imported condition which he would classify as a decoration. He stated that the articles could not be used for the purposes for which they were produced if they were decorated or ornamented, because the decoration or ornamentation would destroy the surface quality which is required for such use, which was the only use he knew of for these ceramics. He explained that it would not be commercially practical to make decorated or ornamented ware out of any of these items, since it would increase the cost and destroy the utility of the articles.

The witness testified that the ultimate product is used in electronic circuitry, to dissipate power, to change the voltage, to adjust the electrical parameters, to make the electronic device operative. It has a given resistance value and a given stability under its environmental conditions and its operating conditions. This is obtained primarily through the resistance film, the porcelain being used as a catalyst and as a base to support the film.

On cross-examination, the witness said that it was conceivable that the ceramic rods could be colored or tinted by dipping them in paint

or a solution of some kind, but that, while it was possible to paint, color, tint, or decorate them, they were not commercially susceptible of decoration. He pointed out that if one were to use such pieces as bases for decoration or ornamentation, one would not require the premium quality and the more expensive processing of the ceramic necessary to insure this quality. He added that exhibits 1 through 5 are tailor-made products, not designed to be ornamented or decorated in any manner. In their imported condition, they have no color other than that given them by the natural clay or material of which they are made. The color of the final product is in the coating or molding and does not touch the ceramic itself. Its purpose is to identify the type of resistor. The color of the ceramic is not visible in the final form of the product; therefore, there would be no practical commercial object in deliberately coloring these rods for the purpose of ornamentation or decoration.

The witness gave an example of a type of porcelain article that is designed for electrical purposes and which is susceptible of decoration, namely, a high voltage insulator, which is used for the insulation of wires from their supports and which is often glazed with brown or white glaze.

William C. Beard, chief chemist of the Philadelphia Customs Laboratory, testified that he had examined plaintiff's exhibits 1 through 5; that, in his opinion, they are porcelain ware, and that they could be painted, colored, tinted, ornamented, or decorated. He said he had never attempted to decorate them, but that he had put a little ink on them and they seemed to color. He did not attempt to find out whether that would destroy their qualities, but he did not think it would serve any useful commercial purpose to color or tint these rods.

Plaintiff claims that the imported ceramic rods are not susceptible of decoration and that, therefore, they are not classifiable under paragraph 212 of the tariff act, as modified, but are properly dutiable under paragraph 214, as modified. The defendant claims that, in order to come within paragraph 212, an article need not be susceptible of decoration.

Apparently, the Government does not claim that the imported articles are susceptible of decoration. This language has been held not to include articles which, although they could be decorated, never are, and which it would be absurd to decorate since it would increase the cost and serve no purpose in view of the use of the articles. *United States* v. *Behrend*, 167 Fed. 317; *Dingelstedt et al.* v. *United States*, 91 Fed. 112; *United States* v. *Downing*, 201 U.S. 354; *Fensterer & Ruhe* v. *United States*, 1 Ct. Cust. Appls. 93, T.D. 31110; *Arthur H. Thomas Co.* v. *United States*, 8 Cust. Ct. 395, C.D. 645. In the instant

case, the testimony establishes that the imported ceramic rods are never decorated; that it would not only increase the cost but destroy the utility of the articles if they were decorated; and that they are completely hidden from view in the final product. It is evident, therefore, that these articles are not susceptible of decoration within the meaning of tariff statutes and decisions.

In order to determine whether they are, nevertheless, classifiable under paragraph 212 of the Tariff Act of 1930, as modified, it is pertinent to examine earlier statutes and decisions thereunder.

In *Dingelstedt et al.* v. *United States, supra,* the court had before it carbon points for arc lights, composed chiefly of lampblack, graphite, and carbon products, and the question was whether they were classifiable under paragraph 86 of the Tariff Act of 1894 which provided:

All articles composed of earthen or mineral substances, including lava tips for burners, not specially provided for in this Act, if decorated in any manner, forty per centum ad valorem; if not decorated, thirty per centum ad valorem.

The court held that the imported articles were not classifiable under this paragraph, pointing out that while the phrase "all articles composed of mineral substances," standing alone, was one of great breadth and would cover many articles, the collocation of paragraph 86 with other paragraphs, covering earthenware, chinaware, and gas retorts, indicated that the phrase was restricted to articles composed of mineral substances similar to those enumerated in the schedule, if not in the subdivision. The court went on to state (p. 114):

* * * Strong confirmation of the correctness of this interpretation is found in the circumstance that congress provides in the paragraph different rates of duty for the "articles" referred to when decorated, and, when not decorated, apparently they had in mind articles susceptible of decoration; and in the further circumstance that congress has inserted in the paragraph the words, "including lava tips for burners." If the phrase relied on were to be given the broad construction contended for, it would be wholly unnecessary to provide specially for lava tips; they would be included in the general phrase. Evidently congress understood that this general phrase was used by it in such a restricted sense that it would not cover the lava tips, and therefore they were specially provided for. Construed as above indicated, the paragraph would not cover the carbons now before the court.

This decision was approved by the United States Supreme Court in *United States* v. *Downing, supra,* in a case involving paragraph 97 of the Tariff Act of 1897, which provided:

Articles and wares composed wholly or in chief value of earthy or mineral substances, or carbon, not specially provided for in this act, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem.

The Court held that this paragraph was limited to articles which were susceptible of decoration and, therefore, did not cover carbon sticks used for electric lights.

Following these decisions, it was held, in *Fensterer & Ruhe* v. *United States*, *supra*, that bisque rings for incandescent burners, not susceptible of decoration, could not be classified under paragraph 96 of the Tariff Act of 1897, which provided:

All other china, porcelain, parian, bisque, earthen, stone, and crockery ware, and manufactures thereof, or of which the same is the component material of chief value, by whatever name known, not specially provided for in this act, if painted, tinted, stained, enameled, printed, gilded, or otherwise decorated or ornamented in any manner, sixty per centum ad valorem; if not ornamented or decorated, fifty-five per centum ad valorem.

The court, in its decision, enumerated the various provisions for china and earthenware in several tariff acts and stated that these statutes appeared to include all kinds of china and crockery ware, without excepting articles not capable of ornamentation or decoration, but that there had been a trend of construction in the opposite direction with which the court felt constrained to agree.

Subsequently, in the Tariff Act of 1909, provision was made in paragraph 93 for china, porcelain, parian, bisque, earthen, stone, and crockery ware, decorated, and in paragraph 94 for such ware, not decorated. In paragraph 95, it was provided:

Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, *whether susceptible of decoration or not*, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem; * * *. [Italics supplied.]

It was held under this statute in *United States* v. *Fensterer & Ruhe*, 2 Ct. Cust. Appls. 368, T.D. 32094, that bisque rings for incandescent burners, not susceptible of decoration, were not classifiable under paragraph 94, but were properly dutiable under paragraph 95, *supra*. The court stated (p. 371):

* * * This latter paragraph provides for articles composed of earthy or mineral substances not specially provided for, not decorated, whether susceptible of decoration or not. This last provision, "whether susceptible of decoration or not," is new in the act, and appears to be the unmistakable legislative answer to the same question raised by protests filed under the former act. *The principle involved is thus recognized, and appropriate words are used to place such articles as are not susceptible of decoration under the new paragraph 95, leaving the preceding paragraphs to continue within the rule expressed in the former case.* [Italics supplied.]

In *Arthur H. Thomas Co.* v. *United States*, *supra*, the court had before it certain pipe clay triangles, not susceptible of decoration, which had been classified by the collector under paragraph 211 of the Tariff Act of 1930, as earthenware articles, not decorated. The Government claimed that "the term earthenware should be construed in harmony with its ordinary meaning, to include all clay articles which are kiln baked, whether or not they may be or are intended to be

decorated." The court held, however, that the paragraphs of the Tariff Act of 1930 were within the terms of the language of the Tariff Act of 1909 and subject to the same construction as in *United States* v. *Fensterer & Ruhe, supra.* The merchandise was held dutiable under the provisions of paragraph 214 for articles of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, not decorated.

The Government claims that the *Thomas* case is not applicable in the instant case on the ground that paragraph 211 rather than paragraph 212 was there involved and on the further ground that the cases relied upon there (*Dingelstedt* v. *United States, supra*; *United States* v. *Downing, supra*; the *Fensterer & Ruhe* cases, *supra*) are not good authority for interpreting paragraph 212.

The Government relies principally on the fact that the Tariff Act of 1909 provided in paragraphs 93 and 94 for "China, porcelain, parian, bisque, earthen, stone and crockery ware, including" certain named items, whereas the Tariff Acts of 1922 and 1930 (paragraph 212) provide for "China, porcelain, and other vitrified wares, including chemical porcelain ware and chemical stoneware, * * * all bisque and parian wares," including certain named items. It is claimed that the terms "chemical porcelain ware and chemical stoneware" refer to articles of a utilitarian character, not susceptible of decoration in the commercial sense, and that the addition of these words to the chinaware paragraph shows that Congress intended said paragraph to cover all china and porcelain ware whether susceptible of decoration or not. Counsel has quoted in her brief a number of paragraphs from the Tariff Information Surveys, Tariff Act of 1913, the Summary of Tariff Information, 1929, and the Summaries of Tariff Information, 1948, in regard to electrical porcelain and chemical porcelain and stoneware. These surveys describe chemical porcelain as including crucibles and other articles used in laboratories and chemical stoneware as consisting of articles used to hold or convey corrosive liquids. The statements do not indicate whether these articles are decorated or not, but the Summary of Tariff Information, 1929, schedule 2, page 484, includes statistics covering the importation of chemical porcelain and chemical stoneware in two categories, "Plain white or brown, not decorated" and "Decorated." It appears, therefore, that there are articles of chemical porcelain and stoneware which are susceptible of decoration and that Congress was so advised. Consequently, the addition of language covering such ware to the chinaware paragraph in the Tariff Acts of 1922 and 1930 does not manifest any change of intent as to the construction of the paragraph. Had Congress intended paragraph 212 to cover all china and porcelain articles, whether susceptible of decoration or not, it would have used those words as it did in paragraph 214 and its predecessors.

The judicial construction that articles not susceptible of decoration are not covered by provisions of the tariff act which provide for one rate of duty when an article is decorated and another rate when the same article is not decorated is one of long standing. The only significant change in language made by Congress in the statutes has been the addition of the words "whether susceptible of decoration or not" to the earthy or mineral substance paragraph of the Tariff Act of 1909 and later acts. The provisions for earthenware and chinaware articles have been reenacted in substantially the same language. The addition of chemical porcelain and stoneware to paragraph 212 is not such a modification or indication of a contrary legislative intent as to take this case out of the general rule that a reenactment of a provision in substantially the same language is a legislative ratification of the judicial construction. *United States* v. *Astra Trading Corp.*, 44 C.C.P.A. (Customs) 8, C.A.D. 627.

We hold that the ceramic rods involved herein are not commercially susceptible of decoration and are not classifiable under paragraph 212 of the Tariff Act of 1930, as modified. Since it appears from the record that they are composed wholly or in chief value of earthy substances and are not specially provided for, we hold that they are properly dutiable at 15 per centum ad valorem under the provision in paragraph 214 of said tariff act, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, for articles, composed wholly or in chief value of earthy substances, not decorated, other than stone and diamond dies.

To that extent the protest is sustained. As to all other claims, the protest, having been abandoned, is dismissed. Judgment will be rendered accordingly.