BORDER BROKERAGE Co., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Before RICHARDSON, *Judge.*

Consolidated Court No. 76-11-02551

(Decided November 16, 1981)

*George R. Tuttle, A Professional Corporation (Stephen S. Spraitzar* at the trial and on the briefs), for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Madeline B. Kuflik* at the trial; *Susan Handler-Menahem* on the brief), for the defendant.

RICHARDSON, *Judge:* The merchandise in this consolidated case, consisting of halibut snaps, was exported from Canada at various times between 1971 and 1976, and classified in liquidation under TSUS item 731.60, as modified by T.D. 68–9, as *fishing tackle, not specially provided for*, and assessed for duty at 15 or 12.5 *per centum ad valorem*, depending upon the date of entry. It is primarily claimed by the importer that the merchandise should be classified under TSUS item 745.68, as modified by T.D. 68–9, as *clasps or snap fasteners* valued over 20 cents per dozen pieces or parts, at the duty rate of 10 or 8.5 *per centum ad valorem*, depending upon the date of entry.

Alternatively, the importer claims that the merchandise should be classified under TSUS item 657.20, as modified by T.D. 68–9, as articles of iron or steel, not plated or coated with precious metal, at the duty rate of 11 or 9.5 *per centum ad valorem,* depending upon the date of entry.

There is no question but that the imported halibut snaps are articles or implements employed in fishing. Defendant admits that the imported merchandise consists of a metallic fastening which is used to connect fishing lines, that it contains a metallic device with a catch or fastening that closes or locks with a click and is provided with a spring, and that it is made of iron or steel not coated or plated with a precious metal (exhibit 5).

Gerald Packard, head of the Commercial Crab, Black Cod and Halibut Fisheries at Seattle Marine & Fishing Supply Company, testified that he is familiar with the use of halibut snaps and has personally sold halibut snaps to halibut fishermen, that exhibit 1 is a representative sample of the imported merchandise, differing only in the coating—the imported article being hot zinc plated whereas the sample is galvanized, and that in all other respects exhibit 1 is a representative sample of a long-line halibut snap described in entry 123207 which was sold by Summerfield Manufacturing to Seattle Marine.

It was brought out in the witness' testimony that the purpose of a halibut snap-on, as the witness called it, is to fasten the gangens onto the ground line. A gangens is a length of rope measuring between 36 and 60 inches in length having a loop or eye at either end, with a fish hook attached at one end and a halibut snap at the other end. In a fishing operation a ground line, measuring about 1800 feet long, is paid out over the side of a boat and a gangens is fastened onto the line by means of the halibut snap at intervals of 80 to 120 gangens per line.

According to Mr. Packard, who has been with Seattle Marine for 32 years both in his present position and as a shipping and sales clerk, halibut snaps are used only in the commercial fishing industry, and are referred to by commercial fishermen as "snap–ons" or "halibut snap-ons". Mr. Packard was of the opinion that the term "fishing tackle" referred to sporting goods such as rods, reels, and fishhooks used in sport fishing. He said commercial fishermen refer to their equipment as fishing "gear" and not as "fishing tackle"

Mr. Packard's testimony relative to the term "fishing tackle" was essentially corroborated by the testimony of Luhr Jensen, chairman of Luhr Jensen, Inc. of Hood River, Oregon, and president of Luhr Jensen and Sons, Ltd. of Vancouver, B.C., Canada. Luhr Jensen, Inc., manufactures fishing tackle and commercial fishing gear. Mr. Jensen

stated that his commercial fishing business approaches a half million dollars. In his opinion halibut snaps or gear are used in commercial fishing only, and he had never heard commercial fishermen refer to their equipment as fishing tackle. Commercial fishermen refer to it as fishing gear or terminal gear.

It was brought out in the testimony of Mr. Jensen that halibut snaps were developed primarily as a safety feature, and also as a faster method of shooting the line over the stern of a boat and retrieving it. Originally, the traditional method of attaching the gangens to the line was by tying it onto the ground line. However, as the line was retrieved, fishermen risked being hooked in the face or clothing as they were untying the gangens from the line. Halibut snaps provide a safer method by eliminating the untying step.

The testimony of James Armstrong, manager of John Redden Net Company of Bellingham, Washington, relative to nomenclature, is to the same effect. His company handles all types of commercial fishing gear, including nets, trolling gear, halibut gear, crab gear, and any type of fish gear used by commercial fishermen. He also stated that the term "fishing tackle" such as rods, reels, hooks, lines, and leaders are used by sport fishermen.

Not to the same effect, on the matter of nomenclature, however, is the testimony of William E. Smith, owner of a company carrying his name that manufactures both commercial and sport fishing equipment. Mr. Smith testified that he has traveled throughout the United States, Europe and South America, sold commercial fishing equipment all over the United States, attended commercial fishing shows around the world, and has designed halibut snaps. He testified that halibut snaps are not limited to commercial fishing use, but commercial fishing is their primary use, and they are known only by that name on the west coast. Halibut snaps can be used for almost any species of fish. As to the nomenclature "fishing tackle", which he regarded as being a subjective term, and "terminal gear", Mr. Smith testified (R. 64–65) that the terms "fishing tackle" and "terminal gear" were basically synonymous. He said that a gangen is called a snood on the east coast, and that he called halibut snaps "snap-on connectors". In his opinion an angler is a sport fisherman. On cross-examination he admitted that he would refer to plaintiff's exhibit 1 as "terminal gear", and that it would be difficult to characterize it as "fishing tackle" (R. 74).

During the trial attention was called to definitions of the word "clasp", among other things. Mr. Packard thought that a halibut snap could be a clasp. Mr. Jensen said he would consider a halibut snap to be a type of clasp for clasping the gangens onto the ground line. And Mr. Smith agreed that he would have to call it a clasp under

Webster's definition that a clasp is a releasable catch for holding two or more objects together.

Plaintiff argues that the imported merchandise is a clasp because it fastens the gangens to the ground line and, therefore, should be classified under the *eo nomine* provision therefor in item 745.68 which, plaintiff asserts, embraces all forms of the article. Plaintiff further argues that the imported merchandise is excluded from classification under item 731.60 because the halibut snap is *commercial fishing equipment* and, as such, does not come within the ambit of the term "fishing tackle" which is limited to equipment used in sport fishing.

Defendant argues that an *eo nomine* designation does not include all forms of an article where Congress intended otherwise, as it feels is the case with respect to all forms of fishing tackle inclusive of the subject merchandise. Defendant further argues that the term "fishing tackle" in item 731.60 is inclusive of articles used in fishing without regard to use in commercial or sport fishing.

Plaintiff's exhibit 4, admitted into evidence, graphically shows how the halibut snap is clasped or fastened on to the ground line and the gangen.

The court agrees with the plaintiff. In *Fenton* v. *United States*, 1 Ct. Cust. Appls. 529, 532, T.D. 31546 (1911), which involved imported pieces of cork used in the manufacture of fishing floats, the Court of Customs Appeals held that said pieces of cork could not be regarded as "fishing tackle" in the unfinished state in which they were imported, and were properly classified as manufactures of cork. The court interpreted the statute [paragraph 165 of the Tariff Act of 1909] to use the words "fishing tackle" in the sense of "an angler's outfit; angling gear; the hooks, lines, rods, and other implements of the art of fishing" as defined in *The Century Dictionary*.[1] An "angler" is one who fishes with an "angle", i.e., a hook (*Webster's New International Dictionary*, 1953).

The concept of "fishing tackle" in the *Fenton* case was followed in *International Distributors, Inc.* v. *United States*, 57 Cust. Ct. 369, 372 C.D. 2822 (1966), where the court held that the term "fishing tackle" means equipment used by "anglers", those who fish with a hook and line for diversion and not the equipment used in net fishing, primarily commercial. The opinion points out that "the Summary of Tariff Information (1929), schedule 3, page 738, under the heading 'Fishing Tackle' says: 'The fishing tackle covered by this paragraph is used principally by sportsman. * * *'"

In *Manton Cork Corp.* v. *United States*, 65 Cust. Ct. 241, C.D. 4084 (1970), Judge Re speaking for the court continued to adhere to the distinction between sport fishing and commercial fishing.

All witnesses agreed that the purpose of the halibut snaps was to snap or fasten the gangens onto the ground line. Witness Packard said in his opinion a halibut snap met the definition of a "clasp" defined in the *Random House Dictionary of the English Language*, The Unabridged Edition (1966) as: "a device, usually of metal, for fastening together two or more things or parts of the same thing. * * *"

Mr. Jensen agreed with the definition in *Funk and Wagnalls New Standard Dictionary* (1937) of a "clasp" as: "a fastening by which things or parts of a thing are bound or held together", and he considered a halibut snap to be a clasp used to clasp the gangens onto the ground line.

Mr. Armstrong agreed with the testimony of witnesses Packard and Jensen with respect to clasps.

Mr. Smith said a halibut snap is a fastener within the definition of a "clasp" in *Webster's Third New International Dictionary* (1961): "a releasable catch for holding together two or more objects * * * or complimentary parts of something.* * *"

---

[1] The revisers of the dictionary transferred the phrase "fishing tackle" and placed it under the word "tackle" as "apparatus for fishing (fishing tackle)." See *The New Century Dictionary*, page 1934 (1946).

The terms "clasps" and "snap fasteners" as used in item 745.68 of the Tariff Schedules of the United States are *eo nomine* provisions. The Court of Customs Appeals in construing the terms "snap fasteners" and "clasps" in paragraph 348 of the Tariff Act of 1922 (which language is substantially the same as that in item 745.68), held them to be *eo nomine* provisions. *United States* v. *Murphy & Co.*, 13 Ct. Cust. Appls. 456, T.D. 41348 (1926). These terms in item 745.68 are construed to be *eo nomine* provisions.

The court concludes that the term "fishing tackle" in item 731.60 is limited to implements and equipment used in fishing for sport and does not include halibut snaps. Halibut snaps are "clasps" or "snap fasteners" described as "fishing gear" or "terminal gear" used for commercial fishing, which should be classified under item 745.68.

Judgment will be entered herein accordingly.